No. 23-30171

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BUFKIN ENTERPRISES, L.L.C.,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE
COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA, LAKE CHARLES DIVISION
NO. 2:21-CV-4017

**APPELLANTS' BRIEF**

Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321

(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

Kevin W. Welsh
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
(225) 346-0285
(225) 381-9197 (Fax)
kevin.welsh@phelps.com

*Attorneys for Defendants—*
*Appellants*

# CERTIFICATE OF INTERESTED PERSONS

No. 23-30171

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

BUFKIN ENTERPRISES, L.L.C.,

*Plaintiff—Appellee*

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE
COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

*Defendants—Appellants*

_____

The undersigned counsel of record certifies that the following listed

persons and entities as described in the fourth sentence of Fifth Circuit

Rule 28.2.1 have an interest in the outcome of this case. These

representations are made in order that the judges of this Court may

evaluate possible disqualification or recusal.

## Counsel for Defendants—Appellants

Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP

Kevin Welsh
PHELPS DUNBAR LLP

## Defendants—Appellants

**Indian Harbor Insurance Company.** Indian Harbor Insurance Company is a wholly-owned subsidiary of XL Specialty Insurance Company and a wholly-owned indirect subsidiary of XL Group Ltd.

**QBE Specialty Insurance Company.** QBE Specialty Insurance Company is a wholly-owned subsidiary of QBE Holdings, Inc. and a wholly-owned indirect subsidiary of QBE Insurance Group Limited.

**Steadfast Insurance Company.** Steadfast Insurance Company is a wholly-owned subsidiary of Zurich American Insurance Company and a wholly-owned indirect subsidiary of Zurich Insurance Group Ltd.

**General Security Indemnity Company of Arizona.** General Security Indemnity Company of Arizona is a wholly-owned subsidiary of SCOR Reinsurance Company, Inc.

**United Specialty Insurance Company.** United Specialty Insurance Company is a wholly-owned subsidiary of State National Insurance Company, Inc.

**Lexington Insurance Company.** Lexington Insurance Company is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. With the

iv

exception of Vanguard Group, Inc., which has stated in its public filings that it is the beneficial owner of more than 10% of American International Group, Inc. common stock, no other company has an interest of 10% or more in American International Group, Inc.

**Safety Specialty Insurance Company.** Safety Specialty Insurance Company is a wholly-owned subsidiary of Safety National Casualty Corporation and a wholly-owned indirect subsidiary of Tokio Marine Holdings, Inc.

**Old Republic Union Insurance Company.** Old Republic Union Insurance Company is a wholly-owned subsidiary of Old Republic International Corporation.

## <u>Counsel for Plaintiff—Appellee</u>

Wells T. Watson
Meagan N. Johnson
BAGGETT MCCALL, LLC

## <u>Plaintiff—Appellee</u>

**Bufkin Enterprises, L.L.C.**

<u>/s/ *Thomas C. Wright*    </u>
Thomas C. Wright
***Attorney for Defendants—Appellants***

## STATEMENT REGARDING ORAL ARGUMENT

The Court should grant oral argument in this case. This case presents novel legal issues involving the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958, the Federal Arbitration Act, and Louisiana law, and the Court would benefit from the opportunity to engage the parties on these issues.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................iii

STATEMENT REGARDING ORAL ARGUMENT ................................ vi

TABLE OF CONTENTS ......................................................... vii

INDEX OF AUTHORITIES ..................................................... ix

JURISDICTIONAL STATEMENT ........................................... 1

STATEMENT OF THE ISSUES ............................................... 2

INTRODUCTION ................................................................ 4

STATEMENT OF THE CASE ............................................... 7

I.     Factual Background ....................................................... 7

II.    Procedural History ....................................................... 9

SUMMARY OF THE ARGUMENT ...................................... 12

ARGUMENT .................................................................... 15

I.     This Court reviews de novo a district court's denial of a motion
       to compel and refusal to stay proceedings pending arbitration.
       ............................................................................ 15

II.    The Convention required the district court to enforce the
       Policy's arbitration provision. ...................................... 16

       A.     The Policy's arbitration provision meets all the
              requirements for enforcement under the Convention,
              including the requirement that a party to the
              arbitration provision is not an American citizen. ............... 18

       B.     Even if the Insurers' contracts were considered to be
              only separate, equitable estoppel would still mandate
              arbitration under the Convention......................................29

III. The FAA required the district court to enforce the Policy's arbitration provision. .................................................... 35

    A.    The FAA mandates that the arbitration provision in the Policy is valid and enforceable. ............................. 36

    B.    Louisiana Revised Statutes § 22:868 does not "reverse-preempt" the FAA under the McCarran-Ferguson Act. ....... 39

        1.    The Policy's arbitration provision is a "forum or venue selection clause." ............................................. 40

        2.    The Policy is not subject to approval by the Louisiana Department of Insurance. ........................... 43

    C.    Arguments that an arbitration provision is not a "forum or venue selection clause" for purposes of § 22:868 misunderstand Louisiana law. ........................... 43

CONCLUSION ........................................................................ 50

CERTIFICATE OF SERVICE ................................................. 52

CERTIFICATE OF COMPLIANCE ........................................ 52

# INDEX OF AUTHORITIES

## Cases

*Adriatic Fire Ins. Co. v. Treadwell,*
  108 U.S. 361 (1883)..............................................................24

*Allen v. Allen,*
  145 So. 3d 341 (La. 2014)......................................................47

*Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG,*
  783 F.3d 1010 (5th Cir. 2015).................................................27

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)..............................................................36

*Breaux v. Lafourche Par. Council,*
  851 So. 2d 1173 (La. Ct. App. 2003) .......................................49

*Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.,*
  282 So. 3d 1042 (La. 2019)...................................... 44, 45, 48

*Detillier v. Kenner Reg'l Med. Ctr.,*
  877 So. 2d 100 (La. 2004)......................................................47

*Donelon v. Shilling,*
  340 So. 3d 786 (La. 2020)................................................ 41, 45

*Duhon v. Activelaf, LLC,*
  --- So.3d ----, No. 2016-CC-0818, 2016 WL 6123820 (La. Oct. 19, 2016).............................................................................47

*E.E.O.C. v. Waffle House, Inc.,*
  534 U.S. 279 (2002)..............................................................40

*Flintkote Co. v. Thomas,*
  223 So. 2d 676 (La. Ct. App. 1969) ................................... 23, 24

*Francisco v. STOLT ACHIEVEMENT MT,*
  293 F.3d 270 (5th Cir. 2002)....................................... *passim*

ix

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,*
140 S. Ct. 1637 (2020) ..........................................................29

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,*
536 F.3d 439 (5th Cir. 2008) ................................................42

*Grigson v. Creative Artists Agency, L.L.C.,*
210 F.3d 524 (5th Cir. 2000) .......................................... *passim*

*Hodges v. Reasonover,*
103 So. 3d 1069 (La. 2012) ....................................... 42, 43, 46

*Humana Inc. v. Forsyth,*
525 U.S. 299 (1999) ............................................................39

*La. World Exposition v. Fed. Ins. Co.,*
858 F.2d 233 (5th Cir. 1988) ...............................................49

*Lim v. Offshore Specialty Fabricators, Inc.,*
404 F.3d 898 (5th Cir. 2005) .......................................... 15, 41

*Marino v. Dillard's Inc.,*
413 F.3d 530 (5th Cir. 2005) ...............................................15

*MAW Enters., L.L.C. v. City of Marksville,*
149 So. 3d 210 (La. 2014) .............................................. 46, 47

*McDermott Int'l, Inc. v. Lloyds Underwriters of London,*
944 F.2d 1199 (5th Cir. 1991) .............................................41

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ...................................................... *passim*

*Morgan v. Sundance, Inc.,*
142 S. Ct. 1708 (2022) .................................................. 27, 28

*Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.,*
910 F.2d 224 (5th Cir. 1990) ...............................................22

*Parish of St. Charles v. HDI Glob. Specialty SE*, Nos. 22-3404 et,
seq., 2023 WL 1419937 (E.D. La. Jan. 31, 2023) ..................32

*Pasquier, Batson & Co. v. Ewing*,
  367 So. 2d 28 (La. Ct. App. 1978) ....................................... 25

*Pierce Founds., Inc. v. Jaroy Constr., Inc.*,
  190 So. 3d 298 (La. 2016) ................................................... 45

*Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*,
  317 So. 3d 715 (La. Ct. App. 2020) ................................. 30, 31, 32, 33

*Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*,
  No. 18-6192, 2018 WL 4042874 (E.D. La. Aug. 24, 2018) .................. 34

*Regions Bank v. Weber*,
  53 So. 3d 1284 (La. Ct. App. 2010) ..................................... 31

*Rent-A-Ctr. W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ......................................................... 39

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) ....................................................... 41

*Saavedra v. Dealmaker Devs., LLC*,
  8 So. 3d 758 (La. Ct. App. 2009) ....................................... 31

*Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*,
  No. 22-4401, 2023 WL 246832 & n.19 (E.D. La. Jan. 18, 2023) ......... 32

*Safer v. Nelson Fin. Grp., Inc.*,
  422 F.3d 289 (5th Cir. 2005) ............................................ 36

*Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*,
  587 F.3d 714 (5th Cir. 2009) .................................... 41, 43, 48

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) ................................................. *passim*

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*,
  767 F.2d 1140 (5th Cir. 1985) .......................................... 26

*Stadtlander v. Ryan's Fam. Steakhouses, Inc.*,
  794 So. 2d 881 (La. Ct. App. 2001) ................................ 42, 46

xi

*Stanley v. Cryer Drilling Co.*,
36 So. 2d 9 (La. 1948) ........................................................ 22

*Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*,
82 So. 3d 473 (La. Ct. App. 2011) ...................................... 13, 14, 31, 35

*Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*,
243 F.3d 906 (5th Cir. 2001) .................................................. 15, 37, 38

*Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*,
No. 22-2671, 2023 WL 4235565 (E.D. La. June 28, 2023) ................. 32

*Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*,
601 F.3d 329 (5th Cir. 2010) .............................................. 15

*Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.*,
226 F.3d 376 (5th Cir. 2000) ................................................ 23, 24, 25

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) ......................................................... 47

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ......................................................... 37

*Webb v. Investacorp., Inc.*,
89 F.3d 252 (5th Cir. 1996) ................................................ 37

**Statutes and Treaties**

9 U.S.C. § 2 ............................................................... *passim*

9 U.S.C. § 3, .......................................................... 10, 38

9 U.S.C. § 4 ........................................................... 10, 38

9 U.S.C. § 205 ............................................................... 1

9 U.S.C. § 206 ..................................................... 10, 17, 38

9 U.S.C. §§ 16(a)(1) ....................................................... 1

9 U.S.C. § 202 ............................................................... *passim*

9 U.S.C. § 203 ................................................................... *passim*

15 U.S.C. § 12 ......................................................................... 39

15 U.S.C. § 1012 ................................................ 35, 39, 43, 49

15 U.S.C. § 1012(b) ............................................................. 11

28 U.S.C. § 1332 ..................................................................... 1

28 U.S.C. § 1441 ..................................................................... 1

28 U.S.C. § 1446 ..................................................................... 1

Article 1 of the Louisiana Code of Civil Procedure ................... 48

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 art. II(3), 21 U.S.T. 2517, 1970 WL 104417 .................................................................... 17

La. Civ. Code art. 11 ..................................................... 45, 46

La. Civ. Code art. 13 ............................................................ 47

La. Civ. Code art. 1787 ........................................................ 23

La. Code. Civ. Proc. art. 41 ................................................. 48

La. Rev. Stat. § 22:868 ................................................. *passim*

La. Rev. Stat. § 22:46 ............................................................ 8

La. Rev. Stat. § 446 .............................................................. 43

La. Rev. Stat. § 9:2778 ................................................... 42, 47

La. Rev. Stat. § 9:2779 ................................................... 42, 47

La. Rev. Stat. § 38:2196 ....................................................... 42

La. Rev. Stat. § 48:251.8 ...................................................... 42

**Other Authorities**

2 Steven Plitt, et al., *Couch on Insurance* § 22:40 (3d ed. 2023) ............ 24

12 Richard A. Lord, *Williston on Contracts* § 36.1 (4th ed. 2023) ................................................................. 24, 25

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* ................................................. 46

*Restatement (Second) of Contracts* § 1 (1981) ........................................ 22

U.S. World & News Report, *Surplus Lines Insurance*, https://www.usnews.com/insurance/glossary/surplus-lines-insurance (last visited Aug. 7, 2023) ..................................................... 8

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction because this is an interlocutory appeal as of right from a district court's denial of a motion to compel arbitration and refusal to stay proceedings pending arbitration. 9 U.S.C. §§ 16(a)(1)(A)-(C). The district court had subject matter jurisdiction because Appellee sued Appellants in Louisiana state court and Appellants properly removed the case to the federal district court under 9 U.S.C. § 205 and 28 U.S.C. §§ 1441 and 1446 based on the district court's subject matter jurisdiction over the case (i) under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. §§ 202, 203 and (ii) under 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $75,000 and there is complete diversity between the parties.

# STATEMENT OF THE ISSUES

1.    The Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 requires a United States court to compel arbitration if there is an agreement in writing providing for arbitration in the territory of a Convention signatory and a party to the agreement is foreign. Here, a group of domestic and foreign insurers issued Bufkin Enterprises, L.L.C. a property insurance policy and the policy contained an arbitration provision to which all the parties collectively agreed. Did the district court err by denying the insurers' motion to compel arbitration under the Convention?

2.    The doctrine of equitable estoppel can be used to enforce arbitration agreements when a signatory to the contract containing the arbitration provision raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more signatories. Bufkin asserted an insurance claim against a group of domestic and foreign insurers, but then dropped its claim against the Foreign Insurers in an attempt to avoid the application of the Convention. Did equitable estoppel mandate the district court to compel arbitration under the Convention?

3.     The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms. Under the McCarran-Ferguson Act, state laws that regulate the business of insurance can "reverse preempt" the FAA. Louisiana Revised Statutes § 22:868 generally bars arbitration provisions in insurance contracts but does not apply to policies for surplus lines insurance. The policy issued to Bufkin by the insurers was a surplus lines policy. Did the FAA require the district court to enforce the arbitration provision contained in the policy?

## INTRODUCTION

Through arbitration provisions, parties entering into commercial contracts can decide *ex ante* that disputes arising out of those contracts are to be decided by a specific type of tribunal, in a specific location, and applying specific law. In addition to saving the parties the time and expense of litigation, arbitration agreements offer the parties predictability and consistency in the resolution of disputes.

Recognizing the benefits of arbitration, the parties here included an arbitration provision in their insurance policy. The surplus lines property insurance policy the domestic insurers and two foreign insurers issued to Bufkin included a broad arbitration provision directing that all disputes arising out of the policy be referred to an arbitral tribunal in New York. The insurers issued this policy with the knowledge that if a dispute arose between them and Bufkin relating to the policy, multiple sources of law would protect their ability to arbitrate the dispute and halt Bufkin's efforts to litigate the dispute in court. For one, the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 (the "Convention") mandates arbitration because foreign parties—the two foreign insurers—agreed to the policy's arbitration provision. For

another, the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms and stay court proceedings pending arbitration.

Bufkin, however, viewed matters differently after its property was damaged during Hurricane Laura in 2020. In direct violation of the policy's arbitration provision, Bufkin sued the domestic insurers in Louisiana state court alleging that they did not fully and timely pay Bufkin's insurance claim for damage resulting from the hurricane. Bufkin filed a supplemental and amended petition that purported to add the foreign insurers as defendants for the purpose of dismissing them from the case with prejudice. Bufkin contemporaneously filed a separate motion to dismiss the foreign insurers with prejudice, which the court granted. The domestic insurers then removed the case to federal court and moved to compel arbitration. The full complement of the policy's insurers (including the foreign-based insurers) also filed a Petition to Compel Arbitration and Stay Litigation in a separate federal court docket.

But instead of following the dictates of the Convention and the FAA, the district court denied the domestic insurers' motion to compel

arbitration and stay proceedings. The district court's analysis in its denial went off course in three separate ways, each independently a ground for reversal. *First*, the district court erroneously concluded that the Convention did not apply because the policy was not itself an agreement to which all the Insurers were parties and was instead merely eight separate contracts, supposedly making it so no foreign entity was party to the arbitration agreements at issue. This ruling contravenes the policy's plain language, which states that it is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer. *Second*, even assuming the contracts were all separate, the district court mistakenly rejected the doctrine of equitable estoppel, which would still mandate arbitration under the Convention. Equitable estoppel, applicable to arbitration agreements under Louisiana law, is an equity safeguard that is designed to promote fairness and countermand the type of procedural gamesmanship engaged in by Bufkin here. *Third*, the district court incorrectly concluded that the FAA did not mandate arbitration because it was "reverse preempted" by a Louisiana statute that generally bars arbitration in insurance contracts. Specifically, the district court failed to appreciate that the statute contains an express

carveout for surplus lines insurance contracts, such as the insurance contract here. The FAA thus applies in full force and mandates arbitration of Bufkin's claims against the insurers.

This Court should reverse the district court's order denying domestic insurers' motion to compel arbitration and stay proceedings pending arbitration.

## STATEMENT OF THE CASE

### I.    Factual Background

In May 2020, Bufkin Enterprises, L.L.C. ("Bufkin"), domestic insurance companies Appellants Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Safety Specialty Insurance Company; and Old Republic Union Insurance Company's (collectively, the "Domestic Insurers"), and two foreign insurers—Certain Underwriters at Lloyd's, London (the "Lloyd's Underwriters") and HDI Global Specialty SE ("HDI Global"; collectively with the Lloyd's Underwriters, the "Foreign Insurers"; and, collectively with the Domestic

7

Insurers, the "Insurers"[1])—entered into an insurance agreement under which the Insurers would insure Bufkin's property in Louisiana under a surplus lines commercial property insurance policy[2] bearing Account No. 727947 (the "Policy"). ROA.398-526. The Policy is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer. *See* ROA.398-452.

The Policy includes a broad arbitration provision mandating that "[a]ll matters in difference between [Bufkin] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.434. The arbitration provision further provides that a decision reached by the Arbitration Tribunal shall be binding and enforceable in a court of competent jurisdiction. ROA.434.

---

[1] For the avoidance of any doubt, the Insurers state here that the terms "Domestic Insurer" and "Foreign Insurer" as used in this brief are only shorthand terms for party names for purposes of this brief and do not refer to the definitions of those terms contained in La. Rev. Stat. § 22:46.

[2] Surplus lines insurance is "specialized coverage written by unlicensed, nonadmitted insurance companies to cover specific extraordinary items and uncommon or high risks that are generally not covered by traditional insurance companies under standard policies." U.S. World & News Report, *Surplus Lines Insurance*, https://www.usnews.com/insurance/glossary/surplus-lines-insurance (last visited Aug. 7, 2023).

## II.    Procedural History

In October 2021, Bufkin, in direct violation of the Policy's arbitration provision, sued the Domestic Insurers (but not the Foreign Insurers) in Louisiana state court for a declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing. ROA.162-72. Bufkin alleged that the Domestic Insurers did not fully and timely pay Bufkin's insurance claim for property and business interruption losses resulting from Hurricane Laura in August 2020. ROA.162-72. Bufkin filed a supplemental and amended petition that purported to add the Foreign Insurers as defendants for the purpose of dismissing them from the case with prejudice. ROA.656-60. Bufkin contemporaneously filed a separate motion to dismiss the Foreign Insurers with prejudice, which the court granted. ROA.661-62.

The Domestic Insurers removed the case to the U.S. District Court for the Western District of Louisiana on the basis of federal question and diversity jurisdiction. ROA.13-31. The case was assigned to the Honorable James D. Cain, Jr. as Case No. 2:21-cv-04017. ROA.13-31.[3]

---

[3]    The full complement of the Policy's Insurers (including the Foreign Insurers) also filed a Petition to Compel Arbitration and Stay Litigation in U.S. District Court for the Western District of Louisiana, where it was assigned to the Honorable James D. Cain, Jr. as Case No. 2:21-cv-04017. ROA.367-97. That case has been

The Domestic Insurers moved to compel arbitration and stay the district court proceedings under 9 U.S.C. §§ 3, 4, and 206, explaining that the arbitration provision in the Policy must be enforced pursuant to the Convention and also pursuant to the FAA. ROA.332-66.

In a memorandum order, the district court denied the Domestic Insurers' motion to compel arbitration and stay the proceedings. ROA.1737-1754. The court first held that the Convention did not apply because the Domestic Insurers were not parties to an arbitration agreement having a foreign citizen as a party, a prerequisite for the Convention's applicability. According to the district court, each Domestic Insurer "[had] a separate contract with the insured" and, consequently, their arbitration agreements did not include the Foreign Insurers as parties. ROA.1743-44 (Op. at 7-8).

The district court likewise concluded that the Convention did not apply under a theory of equitable estoppel. Under this Court's ruling in *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000), equitable estoppel can compel arbitration where "the signatory to the

---

continued in light of the Domestic Insurers' motion to compel arbitration filed in Case No. 2:21-cv-04017. *See* Case No. 2:21-cv-04017, Dkt. 15 (electronic order).

contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 527 (emphasis and quotation omitted). The district court, however, concluded that equitable estoppel did not apply in this case because Bufkin had dismissed its claims against the Foreign Insurers with prejudice and its claims were against the Domestic Insurers only. ROA.1746 (Op. at 10).

Finally, the district court held that the FAA did not compel arbitration here because Louisiana Revised Statutes § 22:868(A)(2), which provides, with important exceptions, that arbitration agreements in insurance contracts delivered in Louisiana are unenforceable, "reverse-preempted" the FAA under the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), a statute providing that federal statutes not specifically related to "the business of insurance" cannot preempt state statutes enacted "for the purpose of regulating the business of insurance." ROA.1747-54 (Op. at 11-18). Although § 22:868(D) provides a carveout from § 22:868(A)'s bar of arbitration agreements by stating that the bar "shall not prohibit a forum or venue selection clause in a policy form that

is not subject to approval by the Department of Insurance"—such as the surplus insurance contained in the Policy here—the district court held that the carveout did not apply based on its conclusion that an arbitration clause is not a forum or venue selection clause. ROA.1752-53 (Op. at 16-17).

The Domestic Insurers timely appealed. ROA.1755-56.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's order denying Domestic Insurers' motion to compel arbitration and stay the proceedings pending arbitration.

To begin, the Convention required the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings because the Policy's arbitration provision (1) "is an agreement in writing to arbitrate" the claims asserted by Bufkin; (2) provides for arbitration in New York (within the "territory of a Convention signatory"); (3) "arises out of a commercial legal relationship"; and (4) has "a party to the agreement [that] is not an American citizen" because the Foreign Insurers are parties to the Policy along with the Domestic Insurers. *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir.

2002). The plain language of the Policy states that it is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer, with each Insurer being severally obligated for its component coverage part. The Policy is thus one agreement to which all the Insurers—domestic and foreign—are parties. Moreover, at the very least the arbitration provision was agreed to collectively by all the Insurers. Because the Policy includes an agreement to arbitrate that includes a foreign entity as a party, the district court erred in not compelling arbitration under the Convention. The Court need go no further to resolve this case.

Further, even accepting the district court's conclusion that the Insurers' contracts are all separate, the doctrine of equitable estoppel would still mandate arbitration under the Convention. Under Louisiana law, "[t]he linchpin for equitable estoppel is equity-fairness," *Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*, 82 So. 3d 473, 478 (La. Ct. App. 2011), and equitable estoppel applies to compel arbitration when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.

Bufkin asserted its insurance claim against all the Insurers—including the Foreign Insurers—and in its formal proof of loss described the conduct of the Insurers collectively as a single group. ROA.527-42. Indeed, in its formal proof of loss, Bufkin described the insurance it "purchase[d] . . . from the Insurers" as a single "policy" and a single "contract of insurance." ROA.529-30. Bufkin has transparently dismissed its claims against the Foreign Insurers to avoid invoking the Convention, not because the Foreign Insurers did not engage in the same conduct of which it accuses the Domestic Insurers. Because Bufkin has "raise[d] allegations of substantially interdependent and concerted misconduct by both" the Domestic Insurers and the Foreign Insurers and it "would fly in the face of fairness" to allow Bufkin to avoid the application of the Convention through its procedural gamesmanship, equitable estoppel mandates arbitration under the Convention. *Sturdy Built Homes*, 82 So. 3d at 478 (quotation omitted).

A straightforward application of the FAA also required the district court to grant the Domestic Insurers' motion to compel arbitration and to stay proceedings pending arbitration. The arbitration provision contained in the Policy is "[a] written provision in . . . a contract

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" and is therefore "valid, irrevocable, and enforceable" under the FAA. 9 U.S.C. § 2. So-called "reverse preemption" under the McCarran-Ferguson Act is not applicable because La. Rev. Stat. § 22:868's bar of arbitration provisions in insurance contracts does not apply to surplus lines insurance policies, such as the Policy.

## ARGUMENT

I.  **This Court reviews de novo a district court's denial of a motion to compel and refusal to stay proceedings pending arbitration.**

This Court reviews de novo the denial of a motion to compel arbitration and the refusal to stay proceedings pending arbitration. *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005); *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001). This Court likewise reviews a district court's interpretation of state law de novo. *Marino v. Dillard's Inc.*, 413 F.3d 530, 532 (5th Cir. 2005). A district court's decision not to enforce an arbitration agreement through the use of equitable estoppel is reviewed

for abuse of discretion. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

## II. The Convention required the district court to enforce the Policy's arbitration provision.

The Convention required the district court to grant the Domestic Insurers' motion to compel arbitration and stay the proceedings.

The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. The "goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

As relevant here, the Convention provides:

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 art. II(3), 21 U.S.T. 2517, 1970 WL 104417.

The Convention Act, the federal law implementing the Convention, provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. The Convention Act further provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

Further, and more generally, there is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions" that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

**A.** **The Policy's arbitration provision meets all the requirements for enforcement under the Convention, including the requirement that a party to the arbitration provision is not an American citizen.**

This Court has held that the Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that a court should compel arbitration under the Convention if "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) (quotation omitted). To fail prong 4 of that test, the commercial relationship must be "*entirely* between citizens of the United States." 9 U.S.C. § 202 (emphasis added).

The Policy's arbitration provision meets all these requirements. The provision is broad and mandates that "[a]ll matters in difference between [Bufkin] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.434. The Policy's arbitration provision thus (1) "is an agreement in

writing to arbitrate" the claims asserted by Bufkin; (2) provides for arbitration in New York (within the "territory of a Convention signatory"); (3) "arises out of a commercial legal relationship"; and (4) has "a party to the agreement [that] is not an American citizen" because the Foreign Insurers are parties to the Policy along with the Domestic Insurers. *Id.*

The district court's holding to the contrary is incorrect. The court concluded that the Policy was not one agreement, but instead only ten separate agreements with each individual insurer, and that because the Foreign Insurers are not defendants in this case, there is no agreement with any foreign entity that provides for arbitration. ROA.1743-74 (Op. at 7-8). This ruling clashes directly with both the contract and the statutory text at the most basic level. First, the entire framing is incorrect. It relies on the Contract Allocation Endorsement's text that the policy must be "constructed" as individual contracts with each insurer. ROA.401. But that very provision shows that there is an overarching contract to which all parties (including the Foreign Insurers) are party— the Insurers and Bufkin are collectively agreeing to a contractual provision specifying how the contract is to be interpreted. That

provision's purpose, moreover, is to show that the Insurers intended that their respective obligations to Bufkin contained within the Policy be several. If the phrase "entirely between American citizens" in § 202 is to mean anything, it must mean that a composite insurance policy that may well have individual subparts is covered by the Convention. And as noted further below, at the very least the arbitration provision—located in the Policy's general Compass Commercial Property Form—was agreed to collectively by all the Insurers and Bufkin.

Contrary to the district court's interpretation, the plain language of the Policy shows that it is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer, with each Insurer being severally obligated for its component coverage part. *See* ROA.398-402, 411-52. This is expressly stated in bold language in the Declarations Page of the Policy, which provides that "[t]his Policy consists of the following coverage parts for which a premium is indicated" and then lists each "commercial property coverage part" supplied by the Insurers. ROA.398. That same Declarations Page is signed by a single employee of the Insurers' program manager—AmRisc, LLC—on behalf of all of the Insurers. ROA.398. There is also a "Contact and Complaints"

notice at the end of the Policy that directs concerns or complaints about the Policy to AmRisc and explains that AmRisc is "the managing general agent and/or Correspondent and/or Program Manager that has placed your *insurance policy*"—singular—"with the insurance carrier(s) listed on your policy declarations page." ROA.525 (emphasis added).

That each Insurer is severally liable for its coverage part is also made plain in § VII(W) in the Compass Commercial Property Form, which is titled "SEVERAL LIABILITY NOTICE":

> The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.
>
> The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.

ROA.440.

The Policy's Contract Allocation Endorsement likewise provides that "[t]his insurance is effected with certain insurance underwriters" and that "[t]he liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule"

listed on that page. ROA.401. To reinforce that each Insurer bears several liability for its own coverage part, the Contract Allocation Endorsement provides that "[t]he liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown" in a schedule on that page and further provides that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters." ROA.401.

Moreover, that the Policy's terms provide that it is one overall policy in which each Insurer bears several liability for its own component coverage part is entirely congruent with Louisiana contract law. Under Louisiana law, "an insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts for insurance." *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 232 (5th Cir. 1990) (citing *Stanley v. Cryer Drilling Co.*, 36 So. 2d 9 (La. 1948)). As a matter of general contract law, "[a] contract may consist of a single promise by one person to another, or of mutual promises by two persons to one another; or there may be, indeed, any number of persons or any number of promises." *Restatement (Second)*

*of Contracts* § 1 cmt. c (1981). And as this Court has explained in interpreting Louisiana contract law, "[m]ultiple obligations contained within a single agreement or contract may be solidary, joint, or several." *Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.*, 226 F.3d 376, 386 (5th Cir. 2000) (quoting *Flintkote Co. v. Thomas*, 223 So. 2d 676, 678 (La. Ct. App. 1969)). "When each of different obligors owes a separate performance to one obligee, the obligation is several for the obligors." La. Civ. Code art. 1787.

Applying these precepts, the test for "whether an obligor may be held for the whole or for only a proportionate part of the obligation is essentially whether the two obligors each promised the same or full performance or whether each promised only a different performance, that is to pay a proportionate part of the liability." *Transit Mgmt.*, 226 F.3d at 386 (quoting *Flintkote*, 223 So. 2d at 678). This Court has recognized that under this framework, "[several] obligations, *although they may be contained in the same contract*, are considered as much individual and distinct as if they had been in different contracts and made at different times." *Id.* (quoting *Flintkote Co.*, 223 So. 2d at 678 (emphasis added)). Thus, a contract containing multiple parties and several obligations

remains one unified agreement. *See id.*; 12 Richard A. Lord, *Williston on Contracts* § 36.1 (4th ed. 2023) ("A several obligation . . . has the effect of creating two separate liabilities *on a single contract.*" (emphasis added)); *see also Adriatic Fire Ins. Co. v. Treadwell*, 108 U.S. 361, 365 (1883) (describing companies' several liability as all being under one contract or agreement).

Under this law, the provision that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters" does not mean the Policy is not a single agreement and is instead only separate contracts. Rather, it shows that the Insurers intended that their respective obligations to Bufkin contained within the Policy be several. For example, if one Insurer defaulted on its obligation, the others would not be liable. Notably, the provision closely tracks this Court's own recitation of several liability under Louisiana law: "[several] obligations, *although they may be contained in the same contract*, are considered as much individual and distinct as if they had been in different contracts and made at different times." *Transit Mgmt.*, 226 F.3d at 386 (quoting *Flintkote Co.*, 223 So. 2d at 678 (emphasis added)); *see* 2 Steven Plitt, et al., *Couch on Insurance* § 22:40 (3d ed. 2023) ("The

judicial construction placed upon particular words or phrases made prior to the issuance of a policy employing them will be presumed to have been the construction intended to be adopted by the parties . . . ."). Although the Insurers' obligations are separate, black letter law dictates that the Policy remains a single contract or agreement between all of the Insurers and Bufkin. *See id.*; *Pasquier, Batson & Co. v. Ewing*, 367 So. 2d 28, 30 (La. Ct. App. 1978) ("Those agreements wherein several promisors obligate themselves to perform different and distinct acts are classified as several although *contained in the same contract*." (emphasis added)); 12 Lord, *Williston on Contracts* § 36.1 ("A several obligation . . . has the effect of creating two separate liabilities *on a single contract*." (emphasis added)).

Because the Policy is between domestic and foreign entities and contains an arbitration provision, the Convention covers it and mandates arbitration. *See Francisco*, 293 F.3d at 273.

Further, and as referenced previously, even ignoring that the entire Policy is between domestic and foreign entities, at the very least the arbitration provision was agreed to collectively by all the Insurers— including the Foreign Insurers—and Bufkin. The arbitration provision is

found not in any individual coverage part, but instead in the Policy's general Compass Commercial Property Form in which all the Insurers are referred to collectively. ROA.411-52. For example, the Compass Commercial Property Form provides, "EXCLUSIONS: The Companies do not insure for loss or damage caused directly or indirectly by any of the following. . . ." ROA.411. And, as directly relevant here, the arbitration provision in the Compass Commercial Property Form expressly defines "the parties" to the arbitration provision as "the Insured and the *Companies*"—plural. ROA.434 (emphasis added). That is what is necessary to compel arbitration under the Convention—an "agreement in writing to arbitrate the dispute" and "a party to the agreement is not an American citizen." *Francisco*, 293 F.3d at 273; *see Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144-45 (5th Cir. 1985). Domestic and foreign entities need not necessarily both be parties to the same contract giving rise to the substantive claims that will be arbitrated. *See Francisco*, 293 F.3d at 273.

Finally, even if there were any uncertainty about the Convention's applicability here, controlling precedent dictates that the uncertainty be resolved in the favor of the Convention's applicability. There is "a strong

presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions" that "applies with special force in the field of international commerce." *Mitsubishi Motors*, 473 U.S. at 628-29, 631 (applying presumption to hold that an arbitration agreement was enforceable under Convention despite concerns raised by *American Safety* doctrine relating to enforcement of antitrust laws); *see Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015-16 (5th Cir. 2015) (citing *Mitsubishi Motors*). Thus, this Court has instructed that "doubts as to whether a contract falls under the Convention Act should be resolved in favor of arbitration." *Francisco*, 293 F.3d at 274-75.

As part of its analysis supporting its conclusion that the Policy's arbitration provision was not enforceable under the Convention, the district court stated that the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), "clipped the wings of the oft quoted 'strong federal policy favoring arbitration' created by the FAA" and "explain[ed] that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over

litigation." ROA.1742-43 (Op. at 6-7). *Morgan* did not "clip the wings" of the federal policy favoring arbitration. Rather, it was a procedural decision that rejected some circuits' misplaced invocation of that policy to erroneously create "an arbitration-specific waiver rule." *Morgan*, 142 S. Ct. at 1712. The Court thus held that "the FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id.* at 1713 (quotation omitted).

*Morgan* is not relevant to whether the Convention applies in this case because resolving that issue is not a matter of procedure and does not involve any "special, arbitration-preferring procedural rule[]." *Id.* Instead, it simply entails interpreting the Policy agreed to by the parties and enforcing the arbitration provision contained within it—matters at the core of the federal policy favoring arbitration. *See Mitsubishi Motors*, 473 U.S. at 625-26 ("[T]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that we rigorously enforce agreements to arbitrate." (quotation omitted)). *Morgan*, moreover, was a purely domestic FAA case and did not address the presumption in favor of

enforcing arbitration agreements involving international commerce under the Convention, as the Court had applied in *Mitsubishi Motors*.

The "strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions" that "applies with special force in the field of international commerce" thus remains fully applicable here, *Mitsubishi Motors*, 473 U.S. at 631, as does this Court's instruction that "doubts as to whether a contract falls under the Convention Act should be resolved in favor of arbitration," *Francisco*, 293 F.3d at 274. Therefore, even if there were any doubt about whether the Policy is one agreement and not just ten separate ones, that "doubt[] should be resolved in favor of arbitration." *Francisco*, 293 F.3d at 274.

**B.   Even if the Insurers' contracts were considered to be only separate, equitable estoppel would still mandate arbitration under the Convention.**

Even accepting the district court's conclusion that the Insurers' contracts are all separate, the doctrine of equitable estoppel would still mandate arbitration under the Convention.

"[S]tate-law doctrines related to the enforcement of arbitration agreements," including the doctrine of equitable estoppel, still apply in the application of the Convention and the Convention Act. *GE Energy*

*Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-45 (2020). Like many other courts, Louisiana courts have used equitable estoppel to enforce arbitration agreements. In *Pontchartrain Natural Gas Systems v. Texas Brine Co.*, 317 So. 3d 715 (La. Ct. App. 2020), the court considered this Court's ruling in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), and adopted its principles as a matter of Louisiana law. In *Grigson*, this Court concluded that "the principle of equitable estoppel could allow a non-signatory to a contract with an arbitration clause to compel arbitration with a signatory." *Pontchartrain Nat. Gas*, 317 So. 3d at 743 (citing *Grigson*, 210 F.3d at 527-28). One situation where this is appropriate is "when a signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id.* (citing *Grigson*, 210 F.3d at 527). A second situation is "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* (citing *Grigson*, 210 F.3d at 527). The *Pontchartrain* court concluded that equitable estoppel was appropriate

because the second situation was present: "Although Texas Brine carefully pleaded its claims" separately against signatories and non-signatories to the relevant arbitration agreement, the court "did not find that the various tortious acts [were] wholly separate and apart from each other." *Id.* at 744. Thus, under equitable estoppel, all of Texas Brine's claims were "subject to consideration by the arbitration panel." *Id.*

Similarly, in *Saavedra v. Dealmaker Developments, LLC*, 8 So. 3d 758, (La. Ct. App. 2009), the court of appeal held that it "agree[d]" with *Grigson*'s holding that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 763 n.5 (quoting *Grigson*, 210 F.3d at 527). And in *Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*, 82 So. 3d 473 (La. Ct. App. 2011), the court of appeal approvingly cited *Grigson* and stated that "[t]he linchpin for equitable estoppel is equity-fairness" and that "to not apply this intertwined-claim basis to compel arbitration would fly in the face of fairness." *Id.* at 478 (alteration in original) (quoting *Grigson*, 210 F.3d at

528). *Regions Bank v. Weber*, 53 So. 3d 1284, 1291 (La. Ct. App. 2010), is to similar effect.

In line with these decisions of Louisiana courts, numerous federal district court decisions applying Louisiana law have, in cases similar to the one here, concluded that equitable estoppel is appropriate to compel arbitration under the Convention. *See, e.g.*, *Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*, No. 22-2671, 2023 WL 4235565, at *3 (E.D. La. June 28, 2023) (collecting cases); *Parish of St. Charles v. HDI Glob. Specialty SE*, Nos. 22-3404 et seq., 2023 WL 1419937, at *4 (E.D. La. Jan. 31, 2023) ("[E]quitable estoppel applies to preclude the Parish from objecting to arbitration as to the domestic insurers because the Parish's claims against all Defendants are inextricably intertwined."); *Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, No. 22-4401, 2023 WL 246832, at *4 & n.19 (E.D. La. Jan. 18, 2023).

Here, even if—contrary to the facts—the Insurers' contracts with Bufkin were found to be only separate contracts, and somehow the Convention does not apply by its text, Bufkin has "raise[d] allegations of substantially interdependent and concerted misconduct by both" the Domestic Insurers and the Foreign Insurers that would make the

Convention applicable to the Domestic Insurers' agreements by virtue of equitable estoppel. *Pontchartrain Nat. Gas*, 317 So. 3d at 743. As an initial matter, all of the entirely "separate" contracts would have the identical operative policy language contained in the Policy. *See* ROA.398-473, 501-26. And although Bufkin's initial state court complaint scrupulously refers only to the Domestic Insurers, ROA.162-72, Bufkin's supplemental and amended petition adds the Foreign Insurers as Defendants and expressly describes the Foreign Insurers and the Domestic Insurers as having collectively engaged in the exact same conduct, ROA.656-60.[4] This is a textbook example of "allegations of substantially interdependent and concerted misconduct." *Pontchartrain Nat. Gas*, 317 So. 3d at 743.

Bufkin, moreover, transparently dismissed its claims against the Foreign Insurers to avoid invoking the Convention, not because the Foreign Insurers did not engage in the same conduct of which it accuses the Domestic Insurers. For example, in its memorandum opposing the Domestic Insurers' motion to compel arbitration, Bufkin attempted to

---

[4] The Insurers' Petition to Compel Arbitration and Stay Proceedings also describes the Insurers as engaging in the same conduct. ROA.367-97.

33

differentiate its case from a district court case compelling arbitration under equitable estoppel by stating, "Contrary to *Port Cargo*, Plaintiff herein has dismissed the two foreign insurance carriers with prejudice, forgoing any lawsuit or arbitration. As such, there is no arbitration to join." ROA.630 (discussing *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874 (E.D. La. Aug. 24, 2018)).

Furthermore, Bufkin asserted its insurance claim against all the Insurers—including the Foreign Insurers—and in its formal proof of loss described the conduct of the Insurers collectively as a single group. ROA.527-42. Indeed, in its formal proof of loss, Bufkin described the insurance it "purchase[d] . . . from the Insurers" as a single "policy" and a single "contract of insurance." ROA.529-30 ("Bufkin Enterprises entered into this contract of insurance with the reasonable expectation that the Insurers would abide by the terms of *their policy* and pay losses without delay" (emphasis added)).

When the Insurers agreed to insure Bufkin's property under the Policy, they did so with the knowledge that foreign insurers were participating and that the Convention would therefore apply to enforce

the Policy's arbitration provision should Bufkin attempt to not honor that arbitration provision. "[T]he linchpin for equitable estoppel is equity-fairness," and to allow Bufkin to subvert through transparent procedural gamesmanship the settled expectation that the Convention would apply "would fly in the face of fairness." *Sturdy Built Homes*, 82 So. 3d at 478 (quoting *Grigson*, 210 F.3d at 528). Therefore, even accepting the district court's conclusion that the Insurers' contracts are only separate, equitable estoppel would still have mandated arbitration under the Convention. After all, Bufkin is the party resisting arbitration despite agreeing to arbitrate with all of the Insurers.

## III. The FAA required the district court to enforce the Policy's arbitration provision.

Independent of the Convention, a straightforward application of the FAA also required the district court to grant the Domestic Insurers' motion to compel arbitration and to stay proceedings pending arbitration. The McCarran-Ferguson Act, 15 U.S.C. § 1012, permits states to "reverse-preempt" the FAA. Louisiana, in La. Rev. Stat. § 22:868, has barred arbitration provisions for many types of insurance policies. But that bar does not apply to "forum selection" clauses in surplus lines

policies, like those at issue here. Because an arbitration provision is a type of forum selection clause, this dispute is arbitrable.

The district court's conclusion to the contrary flatly misread § 22:868. Under the plainest meaning of the statutory text, an arbitration clause is a forum selection clause, as this Court, Louisiana courts, and the Supreme Court have held again and again. Any argument otherwise misunderstands the nature of an arbitration clause.

### A. The FAA mandates that the arbitration provision in the Policy is valid and enforceable.

The FAA was enacted by Congress "in response to widespread judicial hostility to arbitration" and aims "to ensure judicial enforcement of privately made agreements to arbitrate." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (quotation omitted). Section 2 of the FAA provides that such contracts are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. This provision reflects both "a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citations and quotations omitted); *see Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) ("The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration."). Thus, as a general matter,

the FAA "pre-empts application of state laws which render arbitration agreements unenforceable." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989).

In ruling on a party's motion to compel arbitration under the FAA, "courts generally conduct a two-step inquiry." *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam). "The first step is to determine whether the parties agreed to arbitrate the dispute in question," which turns on (i) whether there is a valid agreement between the parties and (ii) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. "The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 628).

The analysis for ruling on a motion to stay proceedings pending arbitration is largely the same. Section 3 of the FAA "requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement." *Texaco Expl.*, 243

F.3d at 909 (quotation omitted). If the issues in the case are within the reach of the agreement, the district court must grant the stay. *Id.*; 9 U.S.C. § 3.

Here, the Policy's arbitration provision is broad and mandates that "[a]ll matters in difference between [Bufkin] and the [Insurers] . . . in relation to this insurance, including its formation and validity, . . . shall be referred to an Arbitration Tribunal" seated in New York and applying New York law. ROA.434. This arbitration provision is "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" and is therefore "valid, irrevocable, and enforceable" under the FAA. 9 U.S.C. § 2. Bufkin directly violated this provision by suing the Domestic Insurers in Louisiana state court for breach of contract and breach of the duty of good faith and fair dealing, ROA.162-72, matters plainly covered by the Policy's arbitration provision.

To vindicate their rights under the Policy, the Domestic Insurers moved to compel arbitration under 9 U.S.C. § 4 and to stay proceedings pending arbitration under 9 U.S.C. § 3. Because the FAA mandates that the arbitration provision in the Policy is valid and enforceable, the

district court was required to grant the Domestic Insurers' motion to compel the arbitration of Bufkin's claims against them and to stay proceedings pending arbitration. 9 U.S.C. §§ 2, 3, 4; *see, e.g., Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) ("The FAA . . . places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms" (citations omitted)). The district court therefore erred in denying the Domestic Insurers' motion to compel arbitration and in refusing to stay proceedings.

## B. Louisiana Revised Statutes § 22:868 does not "reverse-preempt" the FAA under the McCarran-Ferguson Act.

The McCarran-Ferguson Act, 15 U.S.C. § 1012, can sometimes exempt state laws regulating insurance from FAA preemption. Specifically, the McCarran-Ferguson Act "precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alteration in original) (quoting 15 U.S.C. § 12).

Any argument that Louisiana law precludes the FAA through the McCarran-Ferguson Act and La. Rev. Stat. § 22:868 is wrong. As relevant here, La. Rev. Stat. § 22:868 limits the use of some kinds of provisions in insurance contracts, but then broadly exempts surplus lines policies:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . .
>
> > (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> . . . .
>
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Although the arbitration provision in the Policy "[d]epriv[es] the courts of [Louisiana] of the jurisdiction or venue" of the suit against the Domestic Insurers, *id.* § 22:868(A), the carveout in § 22:868(D) renders subsection A's bar of arbitration clauses inapplicable in this case.

### 1. The Policy's arbitration provision is a "forum or venue selection clause."

*First*, the arbitration provision in the Policy is a "forum or venue selection clause." As the Supreme Court has repeatedly explained, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a

specialized kind of forum-selection clause." *Scherk*, 417 U.S. at 519; *see E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002) ("[A]rbitration agreements that are enforceable pursuant to the FAA . . . only determine[] the choice of forum."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483 (1989) (stating that arbitration agreements "advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be judicial or otherwise"); *Mitsubishi Motors*, 473 U.S. at 631 (describing an arbitration provision as a "choice-of-forum provision[]").

This Court, moreover, has heeded the Supreme Court's guidance: "The Supreme Court has emphasized that arbitration agreements are forum-selection provisions." *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 720 n.21 (5th Cir. 2009); *see Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005) ("An arbitration clause is a subset of a forum selection clause."); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1205 (5th Cir. 1991) (arbitration provision is a "forum selection clause").

Louisiana law likewise recognizes that an arbitration provision is a type of forum-selection clause. The Louisiana Supreme Court has

expressly stated, "An arbitration clause has been characterized by this court as a type of venue selection clause." *Donelon v. Shilling*, 340 So. 3d 786, 790 n.6 (La. 2020). It has also stated that a "mandatory-arbitration clause" is a type of "forum-selection clause." *Hodges v. Reasonover*, 103 So. 3d 1069, 1076 (La. 2012) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 443 (5th Cir. 2008)). And in *Stadtlander v. Ryan's Family Steakhouses, Inc.*, 794 So. 2d 881, 890 (La. Ct. App. 2001), the court of appeal held that "[a]n arbitration agreement is a "kind of forum-selection clause." *Id.* at 890 (quoting *Scherk*, 417 U.S. at 519)).

Similarly, Louisiana Revised Statutes §§ 9:2778 and 9:2779—statutes dealing with public policy as to public contracts and construction contracts, respectively—also describe an arbitration clause as a type of forum selection clause. Sections 9:2778 and 9:2779 provide that because public contracts "requiring disputes arising thereunder to be resolved in a forum outside of [Louisiana] . . . are inequitable," any provision in a public contract that "[r]equires a suit *or arbitration proceeding* to be brought in a forum or jurisdiction outside of [Louisiana]" is void. *Id.*

§§ 9:2778(A), (B)(1) and 9:2779(A), (B)(1) (emphasis added). Louisiana Revised Statutes §§ 38:2196 and 48:251.8 are to similar effect.

### 2. The Policy is not subject to approval by the Louisiana Department of Insurance.

*Second*, the Policy is for surplus lines insurance, a policy form that is indisputably "not subject to approval by [Louisiana] the Department of Insurance." La. Rev. Stat. § 22:868(D); La. Rev. Stat. § 446. Thus, under the plain language of § 22:868(D), the arbitration provision in the Policy is a "forum or venue clause selection in a policy form that is not subject to approval by the Department of Insurance," making it so § 22:868(A)'s prohibition of insurance contracts depriving Louisiana courts of jurisdiction or venue is inapplicable to the Policy. And because § 22:868(A) does not apply to the Policy, application of the FAA's provisions mandating arbitration would not "invalidate, impair, or supersede" § 22:868, and the McCarran-Ferguson Act is inapplicable. 15 U.S.C. § 1012.

### C. Arguments that an arbitration provision is not a "forum or venue selection clause" for purposes of § 22:868 misunderstand Louisiana law.

Despite the repeated statements of the Supreme Court, this Court, and Louisiana courts that an arbitration provision is a forum selection

clause, *see, e.g.*, *Scherk*, 417 U.S. at 519; *Safety Nat'l*, 587 F.3d at 720 n.21; *Hodges*, 103 So. 3d at 1076, the district court held that § 22:868(D) does not permit arbitration clauses in surplus lines policies. ROA.1747-53 (Op. at 11-17). But the district court's analysis mistakenly traded an application of § 22:868(D)'s plain language and principles of Louisiana contract and insurance law for an unsupported interpretation of legislative intent.

The district court began by noting that § 22:868 was amended in 2020. Before that, § 22:868(A)(2) did not include a reference to "venue" and instead stated, "No insurance contract delivered . . . in [Louisiana] . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction of action against the insurer." ROA.1748 (Op. at 12). The old version of § 22:868 also did not include the carveout that is contained in subsection D of the current version of the statute. ROA.1748 (Op. at 12). The district court also noted that in 2019, the Louisiana Supreme Court in *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.*, 282 So. 3d 1042 (La. 2019), had interpreted the old version of § 22:868 and concluded that that version of the statute did not bar forum selection clauses in insurance contracts because forum

44

selection clauses do not deprive Louisiana courts of the "jurisdiction of the action." ROA.1749-50 (Op. at 13-14) (citing *Creekstone Juban*, 282 So. 3d at 1047). From this, the district court speculated that the Louisiana Legislature's amendment the next year to add "venue" to § 22:868(A)(2) and to add the carveout in subsection (D) must have been intended to negate the ruling in *Creekstone Juban* and include only forum selection clauses (and not arbitration clauses) in the carveout. ROA.1751-53 (Op. at 15-17).

But this interpretation—which is not supported by any holding of a Louisiana court or of this Court—contravenes several principles of Louisiana law. First, under Louisiana law, "[t]he starting point for interpretation of any statute is the language of the statute itself." *Pierce Founds., Inc. v. Jaroy Constr., Inc.*, 190 So. 3d 298, 303 (La. 2016). "The words of a law must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter." La. Civ. Code art. 11.

Under these principles of construction, § 22:868(D)'s exemption for a "forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance" includes arbitration

provisions. To begin, Louisiana courts have *expressly stated* that an arbitration provision is a type of forum selection clause. *See Donelon*, 340 So. 3d at 790 n.6; *Hodges*, 103 So. 3d at 1076; *Stadtlander*, 794 So. 2d at 890. Because the words "forum selection clause" constitute "[w]ords of art" that have a "technical" legal meaning espoused by the courts of Louisiana, they must be given that meaning in § 22:868 and include arbitration provisions. La. Civ. Code art. 11. This principle of Louisiana law, moreover, is in lockstep with generally applicable canons of statutory construction: "A statute that uses a common-law term, without defining it, adopts its common-law meaning," and "[i]f a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort, . . . they are to be understood according to that construction." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 320, 322 (2012).

Consideration of other Louisiana statutes also shows that § 22:868(D)'s reference to a "forum . . . selection clause" includes an arbitration provision. In construing legislation, "it is presumed that the intention of the legislative branch is to achieve a consistent body of law." *MAW Enters., L.L.C. v. City of Marksville*, 149 So. 3d 210, 218 (La. 2014).

Thus, to determine the "meaning and intent of a law," one considers "the law in its entirety and all other laws on the same subject matter and plac[es] a construction on the provision in question that is consistent with the express terms of the law." *Allen v. Allen*, 145 So. 3d 341, 346 (La. 2014); *see also Detillier v. Kenner Reg'l Med. Ctr.*, 877 So. 2d 100, 103 (La. 2004) (citing La. Civ. Code art. 13); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (Scalia, J.) ("Statutory construction . . . is a holistic endeavor."). Because Louisiana Revised Statutes §§ 9:2778, 9:2779, 38:2196, and 48:251.8 all describe an arbitration clause as a type of forum selection clause, it is presumed that the Louisiana Legislature's reference to a "forum . . . selection clause" in § 22:868 includes arbitration provisions. *MAW Enters.*, 149 So. 3d at 218.

Likewise, § 22:868(D) should be construed in light of the Louisiana Binding Arbitration Law's ("LBAL") "strong legislative policy favoring arbitration." *Duhon v. Activelaf, LLC*, --- So. 3d ----, No. 2016-CC-0818, 2016 WL 6123820, at *3 (La. Oct. 19, 2016). The LBAL, moreover, "is virtually identical to the FAA, and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in

construing the LBAL." *Id.* The numerous federal cases emphasizing that an arbitration clause is a type of forum selection clause therefore also help show that § 22:868(D) exempts arbitration clauses. *See, e.g., Scherk*, 417 U.S. at 519; *Safety Nat'l*, 587 F.3d at 720 n.21.

To be sure, "jurisdiction and venue are distinct legal concepts." *Creekstone Juban*, 282 So. 3d at 1047.[5] That does not mean, however, that the term "forum selection clause" cannot cover both concepts. Indeed, the *Creekstone Juban* court viewed an arbitration clause—which it saw as going to a court's jurisdiction—as a type of forum selection clause: "[I]t is apparent that the plain language of La. R.S. 22:868(A)(2) does not prohibit the forum selection clause *at issue in this case*, as it chooses New York as the *venue* for the dispute, and does not deprive Louisiana courts of *jurisdiction*." *Creekstone Juban*, 282 So. 3d at 1047 (emphases added). In other words, all arbitration clauses are forum selection clauses, but not all forum selection clauses are arbitration clauses; some forum selection clauses deal with venue only. *See id.* The

---

[5]  Article 1 of the Louisiana Code of Civil Procedure defines "jurisdiction" as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." Venue, on the other hand, "means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." La. Code. Civ. Proc. art. 41.

Supreme Court also explicitly acknowledged this classification in *Scherk*: "An agreement to arbitrate before a specified tribunal is, in effect, a specialized *kind of* forum-selection clause." 417 U.S. at 519 (emphasis added).

One final canon of construction drives home the point that "forum . . . selection clause" in § 22:868(D) includes arbitration provisions: "Every word in a statute must be given meaning, if possible; no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found which will give force to and preserve every word of the statute." *Breaux v. Lafourche Par. Council*, 851 So. 2d 1173, 1177 (La. Ct. App. 2003) (quotation omitted); *see La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 241 (5th Cir. 1988) (interpreting Louisiana law). Section 22:868(A)(2) provides that an insurance contract shall not contain a provision "[d]epriving the courts of this state of the jurisdiction or venue of action against the insurer."

Therefore, because § 22:868 does not apply to the Policy, application of the FAA's provisions mandating arbitration would not "invalidate, impair, or supersede" § 22:868, and the McCarran-Ferguson Act is inapplicable. 15 U.S.C. § 1012. The FAA applies with full force, and the

district court erred in denying the Domestic Insurers' motion to compel arbitration and to stay the proceedings pending arbitration.

## CONCLUSION

This Court should reverse the district court's order denying Domestic Insurers' motion to compel arbitration and stay proceedings pending arbitration.

Respectfully submitted,

/s/ Thomas C. Wright
Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas  77056
(713) 572-4321
(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

Kevin W. Welsh
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
(225) 346-0285
(225) 381-9197 (Fax)
kevin.welsh@phelps.com

***Attorneys for Defendants—
Appellants***

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I electronically transmitted the attached Appellants' Brief to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Thomas C. Wright*
Thomas C. Wright

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 9,727 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font for text and Century Schoolbook 12-point font for footnotes.

*/s/ Thomas C. Wright*