No. 23-30171

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

BUFKIN ENTERPRISES, L.L.C.,

Plaintiff—Appellee

v.

INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; STEADFAST INSURANCE COMPANY;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; SAFETY SPECIALTY INSURANCE
COMPANY; OLD REPUBLIC UNION INSURANCE COMPANY,

Defendants—Appellants

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA, LAKE CHARLES DIVISION
NO. 2:21-CV-4017

---

**APPELLANTS' REPLY BRIEF**

---

Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321

(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

Kevin W. Welsh
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
(225) 346-0285
(225) 381-9197 (Fax)
kevin.welsh@phelps.com

***Attorneys for Defendants—
Appellants***

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................iii

INDEX OF AUTHORITIES ...............................................................iv

INTRODUCTION................................................................................ 1

ARGUMENT ....................................................................................... 2

    I.      The Convention mandates that the district court
           enforce the Policy's arbitration provision. .............................. 2

          A.      The Policy's arbitration provision must be enforced
                  under the Convention because there is an
                  overarching contract that includes foreign entities
                  as parties. ...................................................................... 2

          B.      Bufkin's arguments that equitable estoppel would
                  not mandate arbitration under the Convention are
                  erroneous. ...................................................................... 6

    II.     The FAA requires the district court to enforce the
           Policy's arbitration provision. ............................................... 17

    III.    The service-of-suit provisions in the Policy's
           endorsements do not alter the enforceability of
           the Policy's arbitration provision.......................................... 22

    IV.    The Policy's "suit against companies" paragraph
           does not alter the enforceability of the Policy's
           arbitration provision. ........................................................... 30

CONCLUSION .................................................................................. 31

CERTIFICATE OF SERVICE............................................................ 33

CERTIFICATE OF COMPLIANCE...................................................... 33

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Acad. of Sacred Heart of New Orleans v. Certain Underwriters at
Lloyd's London,*
No. 22-4401, 2023 WL 246832 (E.D. La. Jan. 18, 2023) ..................... 23

*Beachcorner Props., LLC v. Indep. Specialty Ins. Co.,*
No. 23-1287, 2023 WL 7280516 (E.D. La. Nov. 3, 2023)..................... 23

*Bufkin Enters. LLC v. Indian Harbor Ins. Co.,*
No. 2:21-CV-04017, 2023 WL 2393700 (W.D. La. Mar. 7, 2023) ........ 20

*Cadwallader v. Allstate Ins. Co.,*
848 So. 2d 577 (La. 2003) .................................................................. 5, 6

*City of Rose City v. Nutmeg Ins. Co.,*
931 F.2d 13 (5th Cir. 1991) ...................................................... 26, 27, 28

*Courville v. Allied Pros. Ins. Co.,*
218 So.3d 144 (La. Ct. App. 2017) ....................................................... 14

*Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.,*
282 So. 3d 1042 (La. 2019) ........................................................ 18, 19, 20

*Donelon v. Shilling,*
340 So. 3d 786 (La. 2020) .................................................................... 19

*Evergreen Assocs. Inc. v. Indep. Specialty Ins. Co.,*
No. 23-1689, 2023 WL 5333188 (E.D. La. Aug. 18, 2023).................. 22

*Fairway Vill. Condominiums v. Indep. Specialty Ins. Co.,*
No. 22-2022, 2023 WL 2866944 (E.D. La. Apr. 10, 2023) .................. 20

*Flintkote Co. v. Thomas,*
223 So. 2d 676 (La. Ct. App. 1969) ....................................................... 3

*Grigson v. Creative Artists Agency, L.L.C.,*
210 F.3d 524 (5th Cir. 2000)...................................................... *passim*

*Hodges v. Reasonover*,
103 So. 3d 1069 (La. 2012).....................................................18, 19, 20

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999).......................................................................22

*IberiaBank Corp. v. Ill. Union Ins. Co.*,
953 F.3d 339 (5th Cir. 2020)............................................................6

*In re Compl. of Settoon Towing, L.L.C.*,
720 F.3d 268 (5th Cir. 2013).....................................................29, 31

*Kronlage Fam. Ltd. P'ships v. Indep. Specialty Ins. Co.*,
No. 22-1013, 2022 WL 10453007 (E.D. La. Oct. 18, 2022)...........12, 17

*La Mirage Homeowners Ass'n v. Royal Surplus Lines Inc. Co.*,
64 F. App'x 416 (5th Cir. 2003)........................................................27

*McDermott Int'l, Inc. v. Lloyds Underwriters of London*,
944 F.2d 1199 (5th Cir. 1991).................................................*passim*

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022).....................................................................15

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999)..........................................................10

*Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*,
317 So. 3d 715 (La. Ct. App. 2020)..............................................7, 8, 9

*Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's,*
No. 18-6192, 2018 WL 4042874 (E.D. La. Aug. 24, 2018)............3, 8, 9

*Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*,
760 F.2d 390 (2d Cir. 1985)............................................................29

*Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*,
587 F.3d 714 (5th Cir. 2009)....................................................8, 18, 20

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974)..................................................................18, 20

*Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .............................................................. 15

*Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*,
   82 So. 3d 473 (La. Ct. App. 2011) ...................... 12, 13, 14, 17

*Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*,
   No. 22-2671, 2023 WL 4235565 (E.D. La. June 28, 2023) ................. 10

*Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.*,
   226 F.3d 376 (5th Cir. 2000) .................................................. 3

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) .............................................................. 21

## Statutes

15 U.S.C. § 12 ............................................................................ 22

La. Civ. Code art. 11 ............................................................. 20-21

La. Civ. Code art. 2004 ........................................................ 21, 22

La. Civ. Code art. 2056 .............................................................. 5

La. Rev. Stat. § 22:868 ................................................... *passim*

## Other Authorities

12 Richard A. Lord, *Williston on Contracts* § 36.1
   (4th ed. 2023) ...................................................................... 3

Antonin Scalia & Bryan A. Garner, *Reading Law: The
   Interpretation of Legal Texts* ............................................... 21

*Restatement (Second) of Contracts* § 1 ..................................... 3

U.S. World & News Report, *Surplus Lines Insurance*,
   https://www.usnews.com/insurance/glossary/surplus-lines-insurance
   (last visited Dec. 6, 2023) ................................................... 16

# INTRODUCTION

For all its overblown rhetoric, Bufkin's brief does nothing to cast any doubt on the conclusion that both the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 (the "Convention") and the Federal Arbitration Act ("FAA") require that the Policy's arbitration provision be enforced. In addition to failing to rebut the arguments made by the Domestic Insurers in their opening brief, Bufkin fares no better in its own lengthy argument based on the service-of-suit provisions in the Policy's endorsements. Indeed, this Court rejected the argument over 30 years ago in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991). This Court should therefore reverse the district court's order denying the Domestic Insurers' motion to compel arbitration and stay proceedings pending arbitration and remand with instructions to grant the Domestic Insurers' motions.

# ARGUMENT

## I. The Convention mandates that the district court enforce the Policy's arbitration provision.

### A. The Policy's arbitration provision must be enforced under the Convention because there is an overarching contract that includes foreign entities as parties.

Bufkin fails to address most of the Domestic Insurers' arguments showing that the Convention mandates the Policy's arbitration provision be enforced. Instead, it myopically focuses on language in the Contract Allocation Endorsement stating that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters," ROA.401, and argues that because the Policy provides that each Insurer is severally obligated only for its component coverage part, there cannot be an overarching agreement. *See* Appellee's Br. at 18-21.

Bufkin's argument fundamentally misunderstands both the Policy and black letter contract law. As the Domestic Insurers set forth in detail in their opening brief, the Policy is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer. *See* ROA.398-452. That the Policy provides that the Insurers are not jointly liable for the limits of all of each other's respective coverage

2

parts is hardly remarkable and in no way changes that the Policy is one agreement to which all the Insurers—domestic and foreign—are parties. This structure is wholly consistent with well-established principles of contract law: "[a] contract may consist of a single promise by one person to another, or of mutual promises by two persons to one another; or there may be, indeed, any number of persons or any number of promises," *Restatement (Second) of Contracts* § 1 cmt. c (1981), and "[m]ultiple obligations contained within a single agreement or contract may be solidary, joint, or several," *Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc.*, 226 F.3d 376, 386 (5th Cir. 2000) (quoting *Flintkote Co. v. Thomas*, 223 So. 2d 676, 678 (La. Ct. App. 1969)). Thus, several obligations owed by separate parties are still "contained in the same contract." *Transit Mgmt.*, 226 F.3d at 386 (quoting *Flintkote Co.*, 223 So. 2d at 678); *see* 12 Richard A. Lord, *Williston on Contracts* § 36.1 (4th ed. 2023) (same).

Although the Insurers each supplied policy language to support their respective component coverage parts, that does not change the fact that they are all parties to the overarching Policy that contains the arbitration provision. The district court in *Port Cargo Service, LLC v.*

*Certain Underwriters at Lloyd's,* No. 18-6192, 2018 WL 4042874 (E.D. La. Aug. 24, 2018), cited by Bufkin, Appellee's Br. at 19-20, failed to appreciate this point and thus incorrectly concluded that there were *only* separate policies between the plaintiffs and the insurers. *See id.* at *3, *6. Bufkin, moreover, never addresses the Domestic Insurers' point that the Contract Allocation Endorsement's text providing that the Policy must be "constructed" as individual contracts with each Insurer, ROA.401, itself shows that there is an overarching contract to which all parties (including the Foreign Insurers) are party—the Insurers and Bufkin are collectively agreeing to a contractual provision specifying how the contract is to be interpreted. Appellants' Br. at 19.

Bufkin makes the remarkable claim that, despite the arbitration provision appearing once on a single page of the Policy, "there are eight (8) separate alleged arbitration clauses" that merely happen to "read the same." Appellee's Br. at 6. In addition to being facially implausible, Bufkin's contention is refuted by the arbitration provision's language defining "the parties" to the arbitration provision as "the Insured and the *Companies*"—plural. ROA.434 (emphasis added). This, of course, would make no sense if the arbitration provision was between a single Insurer

and Bufkin. Thus, even ignoring that the entire Policy is between domestic and foreign entities, at the very least the arbitration provision was agreed to collectively by all the Insurers—including the Foreign Insurers—and Bufkin.

Bufkin also asserts that "[m]ultiple Service of Suit endorsements emphasize the separate coverage by stating that they apply only to 'the coverage' provided by the particular insurer." Appellee's Br. at 10-11; *see id.* at 32-37. Again, Bufkin ignores that the surplus lines policy here is structured as one overarching insurance policy with component coverage parts provided by each Insurer. That different endorsements from various Insurers apply only to their respective coverage parts is entirely expected because each Insurer faces potential liability only on its own respective coverage part.

Last, Bufkin misses the mark in arguing that under Louisiana Civil Code article 2056, ambiguities in the Policy are to be construed against the Domestic Insurers because they drafted the contracts. Appellee's Br. at 20. Bufkin fails to point to any ambiguities in the Policy, and there are none. *See Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (holding that a policy provision is ambiguous only if it "is susceptible to

two or more *reasonable* interpretations"). As explained at length in the Domestic Insurers' opening brief, the plain language of the Policy shows that it is structured as one overall policy that contains component coverage parts supplied by policies from each Insurer, with each Insurer being severally obligated for its component coverage part. *See* Appellants' Br. at 20-22. This Court should therefore decline Bufkin's invitation to "alter the terms of [an] insurance contract[] under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345-46 (5th Cir. 2020) (quoting *Cadwallader*, 848 So. 2d at 580).

## B. Bufkin's arguments that equitable estoppel would not mandate arbitration under the Convention are erroneous.

Bufkin likewise fails to rebut the Domestic Insurers' argument that even if the Insurers' contracts with Bufkin were found to be only separate contracts, and somehow the Convention does not apply by its text, equitable estoppel would mandate arbitration under the Convention. Equitable estoppel mandates arbitration "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-

signatory and one or more of the signatories to the contract." *Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*, 317 So. 3d 715, 743 (La. Ct. App. 2020) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)). Here, Bufkin has "raise[d] allegations of substantially interdependent and concerted" conduct by both the Domestic Insurers and the Foreign Insurers that would make the Convention applicable to the Domestic Insurers' agreements by virtue of equitable estoppel. *Id.* (citing *Grigson*, 210 F.3d at 527). The district court's conclusion that equitable estoppel was not warranted was an abuse of discretion. *See* ROA.1744-46 (Op. at 8-10).

Bufkin argues that equitable estoppel cannot apply here because it would conflict with Louisiana law, specifically La. Rev. Stat. § 22:868. Appellees' Br. at 22-23, 25-26. That is incorrect. *Grigson* estoppel considers only whether nonsignatories to a contract with an arbitration provision may avail themselves of the arbitration provision in that contract because they are accused of engaging in substantially interdependent and concerted conduct with a signatory. *Pontchartrain Nat. Gas*, 317 So. 3d at 743. Whatever other contracts the nonsignatories happen to have with the plaintiff do not factor into the analysis. *See id.*;

*Port Cargo*, 2018 WL 4042874, at *7 n.6 ("Because this court has found that the domestic insurers can invoke the arbitration clauses in the foreign insurers' contracts with plaintiffs under the Convention through equitable estoppel, it is unnecessary to determine whether plaintiffs' arbitration agreements with the domestic insurers are enforceable.").

Here, even assuming the Insurers' contracts with Bufkin were only separate, the Domestic Insurers could invoke equitable estoppel to enforce the arbitration provision in the contracts between Bufkin and the Foreign Insurers because they would be nonsignatories alleged by Bufkin to have engaged in "substantially interdependent and concerted" conduct with signatories the Foreign Insurers. *Pontchartrain Nat. Gas*, 317 So. 3d at 743. And even assuming *arguendo* the Policy's arbitration provision would otherwise violate § 22:868, equitable estoppel would still mandate arbitration under the Convention. As this Court held in *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714 (5th Cir. 2009), § 22:868 does not reverse preempt the Convention because the McCarran-Ferguson Act does not apply to treaties. *Id.* at 721-25. Because equitable estoppel would be used to allow the Domestic Insurers to compel arbitration under the arbitration agreements between

Bufkin and the Foreign Insurers—agreements that are covered by the Convention—and *not* under the agreements between Bufkin and the Domestic Insurers, equitable estoppel would not be used to enforce an arbitration provision that would otherwise be negated by § 22:868. This application of equitable estoppel thus does not conflict with § 22:868.

Bufkin also attempts to resist the applicability of equitable estoppel by asserting that in this case, unlike in *Port Cargo*, the Foreign Insurers are not defendants to the lawsuit and Bufkin's claims against them "are barred by *res judicata*." Appellee's Br. at 23 (quoting ROA.1746 (Op. at 10)). But why should that make a difference? Regardless of whether Bufkin is pursuing legal claims against the Foreign Insurers, the fact remains that it "raises allegations of substantially interdependent and concerted" conduct by both the Domestic Insurers and the Foreign Insurers. *Pontchartrain Nat. Gas*, 317 So. 3d at 743. Bufkin filed a supplemental and amended petition describing the Foreign Insurers and the Domestic Insurers as having collectively engaged in the exact same conduct, ROA.656-60, asserted its insurance claim against all the Insurers—including the Foreign Insurers, ROA.527-42, and in its formal proof of loss described the insurance it "purchase[d] . . . from the Insurers"

as a single "policy" and a single "contract of insurance," ROA.529-30. Moreover, Bufkin's putative distinction is contradicted by *Grigson* itself, where the arbitration signatory with whom the nonsignatory defendants were accused of intertwined misconduct was *not a defendant* in the lawsuit. *See Grigson*, 210 F.3d at 528 (explaining that TriStar was "a signatory non-defendant . . . charged with interdependent and concerted misconduct with . . . non-signatory defendant[s]" Creative Artists and McConaughey).[1] Although the earlier claims against the signatory non-defendant had been dismissed without prejudice, the fact that those claims were not barred by *res judicata* did not play a role in this Court's analysis. *See id.* at 528-31. The district court's conclusion here that equitable estoppel was not appropriate because Bufkin had dismissed its claims against the Foreign Insurers, ROA.1746 (Op. at 10), was therefore

---

[1]    Bufkin also asserts without elaboration that *Grigson* is inapplicable to this dispute because it was "a case involving movie contracts which has nothing to do with Louisiana insurance law." Appellee's Br. at 22. Bufkin's contention ignores that nothing in *Grigson* limits its holding on the general principles of equitable estoppel in the context of a motion to compel arbitration to the specific claims and subject matter of *Grigson* and that the principal case relied upon by the *Grigson* Court, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), involved vastly different subject matter and claims. Bufkin's contention is also belied by the numerous district court opinions that have applied *Grigson* to disputes relating to Louisiana insurance law. *See, e.g.*, *Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*, No. 22-2671, 2023 WL 4235565, at *3 (E.D. La. June 28, 2023) (collecting cases).

legal error and an abuse of discretion. *See Grigson*, 210 F.3d at 528 ("To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous.").

Furthermore, the only reason the Foreign Insurers are not also parties to this suit is Bufkin's procedural gamesmanship in seeking to manufacture a supposed basis to avoid *Grigson* estoppel. *See* ROA.630 (stating that equitable estoppel does not apply because Bufkin has dismissed the two foreign insurance carriers with prejudice, forgoing any lawsuit or arbitration," and, "[a]s such, there is no arbitration to join"). Bufkin claims that its assertion of its insurance claim against all the Insurers cannot show that it has accused all the Insurers of intertwined misconduct because it "was following instructions and addressing correspondence to the entity named." Appellee's Br. at 24. Bufkin misses the point—its submission of its insurance claim to all the Insurers, pursuant to instructions, shows how clear it was to all involved that the Domestic Insurers and Foreign Insurers were identically situated and engaging in interdependent conduct in processing Bufkin's claim. Bufkin's later dismissal of the Foreign Defendants in the suit was a

naked ploy to attempt to avoid the application of equitable estoppel. "[T]he linchpin for equitable estoppel is equity-fairness," and to allow Bufkin to subvert through procedural gamesmanship the settled expectation that the Convention would apply to any disputes and "would fly in the face of fairness." *Sturdy Built Homes, L.L.C. v. Carl. E. Woodward L.L.C.*, 82 So. 3d 473, 478 (La. Ct. App. 2011) (quoting *Grigson*, 210 F.3d at 528).

This type of unfairness was recently recognized by the district court in *Kronlage Family Limited Partnerships v. Independent Specialty Insurance Co.*, No. 22-1013, 2022 WL 10453007 (E.D. La. Oct. 18, 2022). There, the defendant insurers removed the plaintiff's hurricane property damage suit to federal court under the Convention because some of the insurers, certain Lloyd's Underwriters, were foreign. *Id.* at *1. After the district court denied the plaintiff's motion to remand, the plaintiff moved to voluntarily dismiss the Lloyd's Underwriters with prejudice and also moved for the court to remand the claims against the remaining domestic insurer, ISIC, to state court. *Id.* at *2, *3. The district court denied the plaintiff's motion. *Id.* at *4. The court noted that the plaintiff "expressly seeks to dismiss Underwriters so that it can subsequently request that

the Court reconsider its previous Order and Reasons denying Plaintiff's motion to remand 'in light of the dismissal of any and all foreign entities.'" *Id.* The court concluded that the plaintiff sought "remand to avoid the application of the Convention Act" and that this was "an effort purposefully designed to prejudice ISIC by depriving it of the benefits of an arbitration provision to which Plaintiff agreed." *Id.* (internal quotation omitted). The court thus held that it "cannot grant a motion for voluntary dismissal driven by such transparently improper motives." *Id.* at *4. The same logic denounces Bufkin's attempts to avoid the Convention's application (and its own contractual obligations) here by dismissing its claims against the Foreign Insurers.

Bufkin attempts to distinguish *Sturdy Built Homes* by claiming that the Domestic Insurers cited it in their brief "to argue that their separate policies should be construed together." Appellee's Br at 25. That is false. Although one issue in *Sturdy Built Homes* was whether separate contracts should be construed together, the Domestic Insurers' citation of the case, Appellants' Br. at 31-32, was unmistakably for its holding on the separate issue of whether *Grigson* estoppel permitted "a non-signatory to a contract with an arbitration clause [to] be compelled to

arbitrate under an equitable estoppel theory," *Sturdy Built Homes*, 82 So. 3d at 478, a question the court answered with a resounding, "Yes." *Id.* Bufkin's putative distinguishment leaves this holding of *Sturdy Built Homes* entirely unaddressed.

Bufkin also cites *Courville v. Allied Professionals Insurance Co.*, 218 So.3d 144 (La. Ct. App. 2017), where the court of appeal ruled that equitable estoppel did not compel a signatory's enforcement of an attorney's fees provision in an arbitration provision against *a nonsignatory* to the contract. *Id.* at 150. *Courville* is inapposite because Bufkin was a signatory to the policies with the Foreign Insurers. The Domestic Insurers' motion to compel arbitration thus entails nonsignatories seeking to compel arbitration against a signatory, the opposite situation from *Courville*. Bufkin asserts that "[i]n this case, it is clear that all Defendants and Plaintiff can be termed as non-signatories to any alleged arbitration contracts," Appellee's Br. at 25, but that is incorrect because even under Bufkin's view that there are only separate contracts, Bufkin was a signatory to arbitration agreements with the Foreign Insurers.

Bufkin also suggests that this Court's decision in *Grigson* is no longer good law because it allegedly relied on the "strong Federal policy favoring arbitration" and that the Supreme Court in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), clarified that such a policy did not exist. Appellee's Br. at 23-24 (quoting *Morgan*, 142 S. Ct. at 1712). In so arguing, Bufkin entirely fails to mention, let alone rebut, the Domestic Insurers' point in their opening brief that "*Morgan* is not relevant to whether the Convention applies in this case because resolving that issue is not a matter of procedure and does not involve any 'special, arbitration-preferring procedural rule[].'" Appellants' Br. at 28 (quoting *Morgan*, 142 S. Ct. at 1713). Bufkin likewise fails to address that "*Morgan . . .* was a purely domestic FAA case and did not address the presumption in favor of enforcing arbitration agreements involving international commerce under the Convention, as the Court had applied in *Mitsubishi Motors* [*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)]." Appellants' Br. at 28-29. Nothing in *Morgan* affected *Grigson* or the Louisiana state court decisions adopting it.

Finally, Bufkin asserts that "there is nothing fair about Defendants' requested relief in this case" and complains that the Domestic Insurers'

"so-called 'fairness' requires the arbitration to be conducted by senior officials in or formally in the insurance industry." Appellee's Br. at 12-13; *see id.* at 10, 22-23, 26, 44-45. But that is exactly what Bufkin agreed to in purchasing a surplus lines insurance policy from the Insurers. It was fully known that the Convention would negate § 22:868's bar on arbitration provisions in insurance contracts, and the Insurers issued the Policy to Bufkin with that knowledge. And while the Convention's application may not further Louisiana's desired public policy, there is nothing "unfair" to Bufkin about this, who should have been well aware of this outcome. Moreover, the Policy's arbitration provision was important to the Insurers because it gave them predictability in resolving disputes dealing with the substantial risks presented by a surplus lines insurance policy. Surplus lines insurance is "specialized coverage written by unlicensed, nonadmitted insurance companies to cover specific extraordinary items and uncommon or high risks that are generally not covered by traditional insurance companies under standard policies." U.S. World & News Report, *Surplus Lines Insurance*, https://www.usnews.com/insurance/glossary/surplus-lines-insurance (last visited Dec. 6, 2023). Surplus lines insurers thus serve as a critical

supplement for the standard market in insuring against catastrophic storms like hurricanes. Bufkin's appeals to fairness are hollow.

On the contrary, it is Bufkin who is attempting to unfairly disown the agreement it struck with the Insurers. The Insurers issued the Policy to Bufkin with the knowledge that if a dispute arose between them and Bufkin relating to the policy, the Convention would protect the Insurers' ability to arbitrate the dispute and halt Bufkin's efforts to litigate the dispute in court. To allow Bufkin to subvert through procedural gamesmanship the settled expectation that the Convention would apply "would fly in the face of fairness." *Sturdy Built Homes*, 82 So. 3d at 478 (quoting *Grigson*, 210 F.3d at 528); *see Kronlage*, 2022 WL 10453007, at *4.

## II. The FAA requires the district court to enforce the Policy's arbitration provision.

As the Domestic Insurers explained in their opening brief, although La. Rev. Stat. § 22:868(A)(2) generally prohibits an insurance contract from having an arbitration provision, the carveout in § 22:868(D) renders subsection A's bar of arbitration clauses inapplicable in this case and makes it so § 22:868 does not "reverse-preempt" the FAA under the McCarran-Ferguson Act. Subsection D provides that "[t]he provisions of

Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance"—such as a surplus lines policy like the Policy here. Because the Supreme Court, this Court, and Louisiana courts have repeatedly stated that an arbitration provision is a type of forum selection clause, *see, e.g.*, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Safety Nat'l*, 587 F.3d at 720 n.21; *Hodges v. Reasonover*, 103 So. 3d 1069, 1076 (La. 2012), Subsection D's reference to "a forum or venue selection clause" includes arbitration clauses. Thus, the arbitration provision in the Policy is covered by the carveout in § 22:868(D).

Bufkin attempts to resist this conclusion by stating that "[w]hereas there are cases in Federal Court where arbitration is considered a subset of forum, Louisiana law and Louisiana Supreme Court jurisprudence make a clear distinction between a judicial forum and an extra judicial forum," and "[t]he former is allowed under Louisiana Revised Statute §22:868 [but] the latter is not." Appellee's Br. at 27-28 (citing *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 282 So. 3d 1042 (La. 2019)); *see id.* at 29-31. There are multiple things wrong with this argument. *First*, it ignores that in addition to federal courts, the Louisiana Supreme Court

has also *expressly stated*, multiple times, that an arbitration provision is a type of forum selection clause. *Donelon v. Shilling*, 340 So. 3d 786, 790 n.6 (La. 2020); *Hodges*, 103 So. 3d at 1076.

*Second*, although the prior version of § 22:868 did not bar forum selection clauses dealing with venue, *Creekstone Juban*, 282 So. 3d at 1049-50, the Louisiana Legislature amended § 22:868 in 2020 to add "venue" to § 22:868(A)(2) and thereby place forum selection clauses dealing with venue on the same plane as those containing arbitration provisions. Bufkin is therefore flatly wrong that forum selection clauses dealing with venue are permitted under § 22:868. And because both venue and arbitration forum selection clauses are now barred by Subsection (A)(2) and are in equal standing, there is no reason to conclude that the Legislature meant for Subsection D to provide a surplus lines insurance carveout for forum selection clauses dealing with venue but not those containing arbitration provisions.

*Third*, while Bufkin contends that "there are cases in Federal jurisprudence that conflate forum and arbitration" and that *Creekstone Juban* does not, Appellee's Br. at 30, this misunderstands *Creekstone Juban*. As the Domestic Insurers have explained, the framework

described in *Creekstone Juban* is consistent with that found in federal courts: all arbitration clauses are forum selection clauses, but not all forum selection clauses are arbitration clauses; some forum selection clauses deal with venue only. *See Creekstone Juban*, 282 So. 3d at 1047.

Bufkin also cites *Fairway Village Condominiums v. Independent Specialty Insurance Co.*, No. 22-2022, 2023 WL 2866944 (E.D. La. Apr. 10, 2023), where the district court held that § 22:868(D)'s carveout "is limited to forum and venue selection clauses, and 'to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators.'" *Id.* at *5 (quoting *Bufkin Enters. LLC v. Indian Harbor Ins. Co.*, No. 2:21-CV-04017, 2023 WL 2393700, at *7 (W.D. La. Mar. 7, 2023)). But *Fairway Village* did not address the dispositive point on this issue: that the Supreme Court, this Court, and Louisiana courts have stated that an arbitration provision is a type of forum selection clause. *See, e.g.*, *Scherk*, 417 U.S. at 519; *Safety Nat'l*, 587 F.3d at 720 n.21; *Hodges*, 103 So. 3d at 1076. Far from "reading arbitration clauses into the text," *Fairway Vill.*, 2023 WL 2393700, at *7, principles of statutory construction dictate that arbitration provisions in surplus lines policies are covered by the carveout in § 22:868(D), *see* La.

Civ. Code art. 11 ("Words of art and technical terms must be given their technical meaning when the law involves a technical matter."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 320, 322 (2012). In addition, if Subsection D only covered venue selection clauses, its reference to a "*forum* or venue selection clause," instead of just "venue selection clause" would be surplusage.

Bufkin also states that "La. Civ. Code art. 2004 makes clauses null that exclude or limit liability for intentional or gross fault that causes damage" and that "the attempt by the insurers to limit their liability through an arbitration provision is null and void." Appellee's Br. at 31. This argument is completely irrelevant to whether Louisiana Revised Statutes § 22:868—a statute entirely separate from Louisiana Civil Code article 2004—reverse preempts the FAA under the McCarran-Ferguson Act.

To the extent Bufkin implies that article 2004 can itself nullify the FAA's mandate that the Policy's arbitration provision be enforced, it is wrong. Even assuming article 2004 prohibits arbitration provisions that "limit liability," that would be irrelevant because it would be straightforwardly preempted by the FAA. *See Volt Info. Scis., Inc. v. Bd.*

*of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (holding that the FAA "pre-empts application of state laws which render arbitration agreements unenforceable"). Because the McCarran-Ferguson Act "precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance," *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (quoting 15 U.S.C. § 12), and article 2004 is a generally applicable law that was not enacted to regulate insurance, article 2004 cannot reverse preempt the FAA.

III. **The service-of-suit provisions in the Policy's endorsements do not alter the enforceability of the Policy's arbitration provision.**

Bufkin also argues at length that the service-of-suit provisions contained in the Policy's endorsements negate the Policy's arbitration provision. *See* Appellees' Br. at 14-17, 32-42. But "[t]he Fifth Circuit and the district courts within the Fifth Circuit have consistently rejected" this argument. *Evergreen Assocs. Inc. v. Indep. Specialty Ins. Co.*, No. 23-1689, 2023 WL 5333188, at *5 & n.58 (E.D. La. Aug. 18, 2023) (collecting cases). Most notably, this Court in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991), interpreted a policy containing both an arbitration provision and a

service-of-suit provision and held that if the service-of-suit provision was a forum selection clause, "the arbitration provision [was] a co-equal forum selection clause." *Id.* at 1205. Thus, interpreting the provisions together, the service-of-suit provision "could be interpreted [as] consistent with the arbitration clause to apply to suits concerning the enforcement of an arbitration award," and it did not negate the arbitration clause. *Id.*

Therefore, "[s]ince *McDermott*, courts have consistently held that endorsements and service of suit clauses . . . do not nullify otherwise valid arbitration agreements." *Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, No. 22-4401, 2023 WL 246832, at *2 (E.D. La. Jan. 18, 2023). Rather, "the service-of-suit endorsement merely establishes a forum where the parties may enforce an arbitration award." *Beachcorner Props., LLC v. Indep. Specialty Ins. Co.*, No. 23-1287, 2023 WL 7280516, at *8 (E.D. La. Nov. 3, 2023).

Bufkin's various attempts to distinguish *McDermott* are all unavailing. Bufkin asserts that an "Applicable Law" section in the Certain Underwriters at Lloyd's, London (the "Lloyd's Underwriters") endorsement is meaningful because it does not mention arbitration or

New York law. Appellee's Br. at 33 (quoting ROA.1038). To begin, this endorsement is not even directly relevant because Bufkin has dismissed its claims against the Lloyd's Underwriters. In any event, Bufkin ignores that this section of the Lloyd's Underwriters endorsement only applies to the suits referenced in the service-of-suit provision, ROA.1038, which, as *McDermott* held, are "suits concerning the enforcement of an arbitration award." *McDermott*, 944 F.2d at 1205.

Bufkin likewise states that the service-of-suit provision in the Lloyd's Underwriters endorsement "does not mention arbitration," claims that it "provided the District Court with other Lloyds' policies where the Service of Suit clause specifically stated that it was not to affect the arbitration clause," and then cites to the purported policies. Appellee's Br. at 34. To the extent these other policies are even admissible evidence—a point the Domestic Insurers do not concede— they are not relevant to interpreting the endorsements that are at issue *in this case*. Moreover, Bufkin's point is immaterial in light of *McDermott*, where the service-of-suit provision also did not include any language stating that it was not to affect the policy's arbitration clause. 944 F.2d at 1200, 1204-05. Unsurprisingly, Bufkin cites no case for its contention

that a policy's service-of-suit provision must state that it does not affect the policy's arbitration clause for the right to arbitration to be preserved.

Next, Bufkin points to language in the endorsements of Indian Harbor Insurance Company and QBE Specialty Insurance Company providing that when a cause of action arises in any of the states listed, service of process applies as specified for that state. Appellee's Br. at 35-36 (citing ROA.485, 1039). According to Bufkin, "[t]here cannot be a cause of action arising in all of these different states resulting from an arbitration in New York under New York law." Appellee's Br. at 35. But Bufkin ignores that under the rules of policy interpretation set forth by this Court in *McDermott*, the "cause of action" referenced in these provisions would be in a "suit[] concerning enforcement of an arbitration award," not Bufkin's underlying claims for payment against the Domestic Insurers. *McDermott*, 944 F.2d at 1205. For the same reason, the language in the QBE Specialty Insurance Company endorsement providing that the company may be sued in Louisiana court "[u]pon a cause of action arising in Louisiana under this contract," ROA.487, just refers to suits for the enforcement of arbitration awards. *McDermott*, 944 F.2d at 1205. Likewise, the service-of-suit provisions in the endorsements

of the remaining Domestic Insurers contain nothing that take this case outside of *McDermott*'s holding that such service-of-suit provisions refer to suits for arbitration awards and do not affect the applicability of separate arbitration provisions. *Contra* Appellee's Br. at 36-37.

Bufkin also argues this case differs from *McDermott* because *McDermott* defined "'claim' in the Service of Suit clause [to] relate[] to enforcement of an arbitration award," and here, the Policy defines "claim" more broadly. Appellee's Br. at 44 (citing ROA.513)).[2] But the definition of "claim" to which Bufkin refers applies only to supplemental cyber suite coverage that the Policy also contains, not to the Policy's coverage for property damage caused by a hurricane contained in the Compass Commercial Property Form. *See* ROA. 501-19. This definition of "claim" is therefore wholly irrelevant to whether the Policy's arbitration provision contained in the Compass Commercial Property Form is affected by the service-of-suit provisions in endorsements.

Furthermore, Bufkin's argument that this issue is governed by *City of Rose City v. Nutmeg Insurance Co.*, 931 F.2d 13 (5th Cir. 1991), and

---

[2] Although this argument appears in a later section of Bufkin's brief, the Domestic Insurers address it here because it relates to Bufkin's arguments regarding the service of suit provisions.

not *McDermott*, also fails. *See* Appellee's Br. at 37-42. The fundamental

difference between *Nutmeg* and *McDermott* is that the policy in *Nutmeg*

did not include an arbitration provision, and the issue was instead

whether a service-of-suit provision prevented an insurer from removing

a state court case to federal court. *Nutmeg*, 931 F.2d at 14-15. *McDermott*

cogently explained why this results in a different outcome:

> The policy at issue in *Nutmeg* featured the service-of-suit
> clause as its only forum selection clause. As previously
> explained, the policy at issue here has two forum selection
> clauses that apply to different types of disputes. The
> arbitration clause's existence creates the possibility, not
> present in *Nutmeg,* that the parties would argue over
> arbitrability, and thus where arbitrability questions would be
> decided. The question presented to both courts in *Nutmeg* was
> whether Nutmeg was liable on its policy, a question that
> unmistakably invokes the service-of-suit clause's "failure ... to
> pay" application language. But, as we have explained, the
> service-of-suit clause does not necessarily apply here because
> a suit to determine arbitrability is not necessarily a suit for
> failure to pay a claim.

944 F.2d at 1207. Put simply, "[t]he presence of an arbitration clause in

*McDermott* distinguishes that case from *Nutmeg*." *La Mirage*

*Homeowners Ass'n v. Royal Surplus Lines Inc. Co.*, 64 F. App'x 416 (5th

Cir. 2003)).

Instead of addressing these dispositive aspects of *McDermott*,

Bufkin focuses on *McDermott*'s alternative point that the service-of-suit

provision could also be interpreted as the foreign insurer's consent to personal jurisdiction in the United States and contends those issues of personal jurisdiction are not present here. Appellee's Br. at 40; *see McDermott*, 944 F.2d at 1205-07. Even ignoring that two of the Insurers in the Policy are foreign and would implicate this aspect of *McDermott*, Bufkin misses the point that either of the alternative readings of a service-of-suit provision—as a forum selection clause for a suit to enforce an arbitration award *or* as consent to personal jurisdiction—is a basis for harmonizing a service-of-suit provision with an arbitration provision. *See McDermott*, 944 F.2d at 1205-07.

Moreover, while *McDermott* stated that *Nutmeg*'s application of the principle that policy ambiguities are asserted against the drafter was another point of distinction, *McDermott*, 944 F.2d at 1207, the *McDermott* Court did not hold that the drafter principle alone makes it so a service-of-suit provision impairs an arbitration provision, and Bufkin does not cite any case that has so held. In any event, the drafter principle does not apply here because Bufkin offered no evidence to support its contention that the Insurers were the drafters of the Policy. Rather, Bufkin's local insurance agent averred that he "negotiated the terms of the policy

coverage," ROA.687, and an affidavit from an employee of AmRisc, LLC stated that AmWINS Brokerage of Florida, Inc., a surplus lines wholesale broker, negotiated "[a]ll terms of insurance . . . on behalf of Bukfin." ROA.865.

Finally, and more generally, Bufkin's arguments about the service-of-suit provisions contradict multiple principles of construction. *First*, Bufkin eschews *McDermott*'s instruction that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." 944 F.2d at 1205 (quoting *Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*, 760 F.2d 390, 395-96 (2d Cir. 1985)). *Second*, Bufkin's arguments about the service-of-suit provisions fail to give credence to the principle of Louisiana law that "[e]ndorsements affixed to a policy of insurance are to be construed in connection with the printed provisions of the policy and the entire agreement harmonized, if possible." *In re Compl. of Settoon Towing, L.L.C.*, 720 F.3d 268, 279 (5th Cir. 2013) (quotation omitted). These principles of construction reinforce that the Court should reject Bufkin's arguments.

**IV. The Policy's "suit against companies" paragraph does not alter the enforceability of the Policy's arbitration provision.**

Last, Bufkin errs in arguing that the "suit against companies" provision in the body of the Policy allows it to avoid arbitration and litigate its claims in Louisiana state court. Appellee's Br. at 42-43. The "suit against companies" paragraph is located in the "CONDITIONS" section of the Compass Commercial Property Form and provides:

> Y. SUIT AGAINST COMPANIES: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

ROA.441.

Bufkin cites no authority in support of its argument, and the argument fails for reasons similar to its argument regarding the service-of-suit provisions. "[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect," *McDermott*, 944 F.2d at 1205 (quotation omitted), and, under Louisiana law, "[e]ndorsements affixed to a policy of insurance are to be

construed in connection with the printed provisions of the policy and the entire agreement harmonized, if possible," *In re Compl. of Settoon Towing*, 720 F.3d at 279 (quotation omitted). In line with these principles and this Court's holding in *McDermott*, the "suit against companies" paragraph can be harmonized with the Domestic Insurers' ability to mandate arbitration under the Policy's arbitration provision by interpreting the "suit against companies" paragraph to explain that Bufkin must initiate arbitration or file suit within 12 months after the date of the loss. If Bufkin files suit, the court would send the dispute to arbitration in accordance with the Policy if a party moves to compel it, but Bufkin's claims would not be invalidated by the "suit against companies" paragraph.

Alternatively, the "suit against companies" paragraph can also be harmonized with the Domestic Insurers' arbitration rights by interpreting it to refer to suits to enforce arbitration awards. *See McDermott*, 944 F.2d at 1205-07.

## CONCLUSION

This Court should reverse the district court's order denying the Domestic Insurers' motion to compel arbitration and stay proceedings

pending arbitration and remand with instructions to grant the Domestic

Insurers' motions.

Respectfully submitted,

*/s/Thomas C. Wright*
Thomas C. Wright
Raffi Melkonian
Eric B. Boettcher
Landon Francois
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas  77056
(713) 572-4321
(713) 572-4320 (Fax)
wright@wrightclosebarger.com
melkonian@wrightclosebarger.com
boettcher@wrightclosebarger.com
francois@wrightclosebarger.com

Kevin W. Welsh
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
(225) 346-0285
(225) 381-9197 (Fax)
kevin.welsh@phelps.com

***Attorneys for Defendants—
Appellants***

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2023, I electronically transmitted the attached Appellants' Reply Brief to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Thomas C. Wright*
Thomas C. Wright

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,309 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font for text and Century Schoolbook 12-point font for footnotes.

*/s/ Thomas C. Wright*